UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL ANTHONY ISOME,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00665 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Michael Anthony Isome ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disabled widower's benefits ("DWB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 10) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed his application for DWB on March 23, 2016, and his application for SSI on September 6, 2016.  (Dkt. 6 at 102, 113).[1]  In his applications, Plaintiff alleged disability beginning January 1, 2000, due to arthritis, high blood pressure, glaucoma, diabetes, acid reflux, back and neck pain, and broken right leg.  (*Id.*).  Plaintiff's applications were initially denied on October 4, 2016.  (*Id.* at 127, 128).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lynette Gohr on September 6, 2018, in Buffalo, New York.  (*Id.* at 62-100).  At the hearing, Plaintiff amended his alleged onset date to March 23, 2016.  (*Id.* at 69).  On November 15, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 12-29).  Plaintiff requested Appeals Council review; his request was denied on March 28, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 2-7).  This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

A claim for DWB requires a claimant to satisfy additional criteria, as well as to show disability.  In particular, to prevail on a claim for DWB, a claimant must show the

following: "(1) [he] is the widow[er] of a wage earner who died fully insured; (2) [he] is at least 50, but less than 60 years old; (3) [he] is disabled; and (4) [his] disability commenced within seven years of the month in which the wage earner died." *Miller v. Comm'r of Soc. Sec. Admin.*, 988 F. Supp. 2d 347, 357 (E.D.N.Y. 2013).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the non-disability requirements for DWB and that the prescribed period extended through November 30, 2020.  (Dkt. 6 at 17).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 23, 2016, the amended alleged onset date.  (*Id.* at 18).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of glaucoma, diabetes mellitus, headaches, asthma, and obesity.  (*Id.*).  The ALJ also found that Plaintiff suffered from the nonsevere impairments of diabetic neuropathy, arthritis in knees, and lumbago.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  In particular, the ALJ considered Listings 2.02 and 3.03 in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-01p.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following additional limitations:

> [Plaintiff can] never climb ladders, ropes and scaffolds; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, dust, odors, fumes and pulmonary irritants; no work at unprotected heights or around dangerous machinery; no work in environments with greater than moderate noise as defined by the Dictionary of Occupational Title (DOT), Selected Characteristics of Occupations (SCO) and related publications; never work with bright or flickering lights such as would be found in welding or cutting metals; no operation of a motor vehicle as part of job duties; cannot perform job tasks that require precise near acuity like threading a needle or reading small print; can use computers or other machinery that permits the user to easily enlarge text but can only occasionally utilize devices with monitors such as those found on computers and tablets; limited to work that does not involve the use of sharp objects, tools or knives. In addition, limited to simple routine tasks, simple work-related decisions and minimal changes in work routines and processes.

(*Id.* at 19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 24).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of checker and bagger. (*Id.* at 25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 20).

## II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the RFC finding was not supported by substantial evidence as

it was the product of the ALJ's lay judgment.  (Dkt. 10-1 at 8-14).  The Court has

considered this argument and, for the reasons discussed below, finds it to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole."  *Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision."  *Id*.

However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's

RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586

(W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not
> substitute his own judgment for competent medical opinion.  This rule is
> most often employed in the context of the RFC determination when the
> claimant argues either that the RFC is not supported by substantial evidence
> or that the ALJ has erred by failing to develop the record with a medical
> opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec.

1, 2017) (quotation and citation omitted).  "[A]s a result[,] an ALJ's determination of RFC

without a medical advisor's assessment is not supported by substantial evidence."  *Dennis*

*v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Plaintiff argues that because the ALJ rejected consultative examiner Dr. Samuel

Balderman's opinion, the only medical opinion of record, the RFC finding was

unsupported by substantial evidence.  (Dkt. 9 at 14).  Dr. Balderman completed a physical

examination of Plaintiff on September 19, 2016, noting:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and
> full rotary movement bilaterally.  No scoliosis, kyphosis, or abnormality in
> thoracic spine.  Lumbar spine shows flexion to 80 degrees and good lateral

> and rotary movements bilaterally.   [Straight leg raising test] negative
> bilaterally.  Full ROM of shoulders, elbows, forearms, and wrists bilaterally.
> Full ROM of hips and ankles bilaterally.  Full ROM of the left knee.  Right
> knee flexes 120 degrees.  No evident subluxations, contractures, ankylosis,
> or thickening.  Joints stable and nontender.  No redness, heat, swelling, or
> effusion.

(*Id.* at 372).  Dr. Balderman observed that "[deep tendon reflexes were] physiologic and

equal in upper lower extremities" and "strength 5/5 in the upper and lower extremities."

(*Id.*).  Dr. Balderman also noted "slight sensory loss in the feet and fingertips" but that

Plaintiff had intact dexterity in hands and fingers and 5/5 grip strength bilaterally.  (*Id.*).

Consistent with his largely unremarkable findings, Dr. Balderman opined that Plaintiff was

moderately limited in prolonged walking, repetitive climbing, and carrying due to diabetic

neuropathy and poor weight control.  (*Id.* at 372).  In assessing Plaintiff's RFC, the ALJ

did not reject Dr. Balderman's opinion entirely, but afforded it "little weight" on the basis

that it was not consistent with the record, citing a "normal monofilament exam and a few

objective findings."  (*Id.* at 23).

The ALJ's conclusion that Dr. Balderman's opinion that Plaintiff was moderately

limited in prolonged walking was inconsistent with the record, is supported by the medical

evidence of record  which routinely noted unremarkable findings.  (*See id.* at 277 (Dr. Ravi

N. Sinha observed joint pain in right leg, but no myalgias, back pain and neck pain and no

dizziness, tingling, sensory change, weakness, and headaches), 283 (Dr. Sinha noted

normal range of musculoskeletal motion; no myalgias, back pain, joint pain, and neck pain;

and no dizziness, tingling, sensory change, weakness and headaches), 286 (Dr. Sinha noted

no back pain, joint pain; normal range of motion in neck, back, shoulders, and hips; and

normal gait), 300 (Dr. Cheryl Neely noted no pain or swelling in musculoskeletal system

or extremities; full active and passive range of motion; circulation intact in all extremities; and intact sensation), 313 (Dr. Tinh Trung Dao noted normal gait and station), 322 (Dr. Dao noted limited range of motion of right knee in flexion but normal monofilament perception), 326 (Dr. Dao noted no edema and normal monofilament perception), 330 (Dr. Dao noted no edema; normal motor strength in upper and lower extremities; and normal monofilament perception), 385 (Dr. Dao noted no edema, full range of motion, and normal sensation to monofilament testing), 389 (Dr. Dao noted no edema, full range of motion, negative straight leg raise, and normal sensation to monofilament testing)).  It was within the discretion of the ALJ to rely on portions of Dr. Balderman's opinion while disregarding others to the extent they were unsupported by the medical evidence of record.  *See Riderer v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. 1:19-CV-00242 EAW, 2020 WL 2833005, at *6 (W.D.N.Y. June 1, 2020) ("The ALJ was free to rely on portions of Ms. Melfi's opinion while disregarding others as unsupported by the medical evidence of record."); *Riley v. Comm'r of Soc. Sec.*, No. 18-CV-6538-MJP, 2020 WL 1061492, at *8 (W.D.N.Y. Mar. 5, 2020) ("Where the A.L.J. explains why he credited some portions of the medical opinion evidence and did not credit others, he has not substituted his own opinion for that of a medical source.").

The ALJ further did not err in assessing Plaintiff's RFC based on the portions of Dr. Balderman's opinion that were consistent with the record (namely, the restriction in climbing) and the medical evidence of record showing that Plaintiff's physical impairments were minor and/or well-controlled with medication. "[U]nder certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an

ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Glena v. Colvin*, No. 1:15-CV-00510(MAT), 2018 WL 739096, at *4 (W.D.N.Y. Feb. 6, 2018) (quotation omitted); *see Mack v. Comm'r of Soc. Sec.*, No. 1:18-CV-00265-MAT, 2019 WL 1994279, at *4 (W.D.N.Y. May 6, 2019) (explaining that where "the treatment notes and recommendations provided by Plaintiff's treatment providers regarding his physical impairments do not reflect disabling functional limitations . . . it was not impermissible for the ALJ to render a common-sense judgment regarding Plaintiff's physical functional limitations").

Here, as discussed in detail above, the medical evidence of record demonstrates that Plaintiff's physical condition was largely normal as evidenced by consistent normal physical examinations.  (*See* Dkt. 6 at 277, 283, 286, 300, 313, 326, 385, 389).  Plaintiff's objective medical testing was also largely unremarkable.  (*See id.* at 267 (imaging revealed no active lung disease in either lung field, normal cervical spine, and normal lumbosacral spine), 329 (Dr. Dao noting that chest x-ray showed "[n]o acute cardiopulmonary radiographic abnormality"), 339 (stress cardiolite myocardial study revealed normal stress/rest cardiolite myocardial scan and normal left ventricular ejection fraction of greater than 60% with normal end systolic wall thickening of the ventricular segments), 354 (ophthalmologic eye exam revealed stable glaucoma, stable accurate visual field defect of right eye, stable nasal step visual field defect, stable age-related nuclear cataract, stable pseudophakia of left eye, and stable posterior subcapsular polar age-related cataract of right eye)).  Dr. Dao noted that Plaintiff's hypertension, headaches, diabetes, and asthma responded well to medication.  (*See, e.g., id.* at 380; 388-89).  Further, there is no evidence

that Plaintiff underwent surgery or received physical therapy, steroid injections, or treatment with a specialist with respect to impairments as to his neck, back, and spine. (*See id.* at 18, 73-74, 92, 227).   On the facts of this case, it was not reversible error for the ALJ to make a common-sense assessment of Plaintiff's RFC.  *See Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (not reversible error for ALJ to assess common-sense judgment as to plaintiff's RFC finding where the medical evidence showed that plaintiff's physical condition was largely normal with only mild ongoing complications from spinal surgery).

Further, contrary to Plaintiff's argument that the ALJ "relied on her own quasi-medical judgment when assessing Plaintiff's RFC" (Dkt. 12 at 1), it is apparent that the ALJ relied on the extensive treatment record showing only minor physical impairments and credited Plaintiff's testimony to assess additional limitations in her RFC finding.  For example, the ALJ provided that Plaintiff could not perform job tasks that required near acuity like threading in welding or cutting metals (Dkt. 6 at 19) based on Plaintiff's testimony that had some difficulty with his vision (*id.* at 79-81).   The ALJ also limited Plaintiff to simple routine tasks, simple work-related decisions, and minimal changes in routine and processes (*id.* at 19) based on Plaintiff's testimony that his medication confused him, resulted in a lack of memory, and adversely affected his judgment (*id.* at 81). Moreover, based on Plaintiff's testimony that he was limited in the work activities he used to do as a cab driver due to residual problems stemming from a car accident (*id.* at 91), the ALJ limited Plaintiff to work that did not involve operation of a motor vehicle as a part of his job duties (*id.* at 19).

The Court is also unpersuaded by Plaintiff's argument that because the record contains numerous treatment records from Dr. Dao, if the ALJ felt that Dr. Balderman's opinion was inconsistent with the record, she should have contacted Dr. Dao for a function-by-function assessment of Plaintiff's physical abilities.  (Dkt. 10-1 at 11).  As discussed above, the RFC is directly supported by the medical evidence in the record, which included Dr. Dao's treatment records showing normal physical examinations.  Accordingly, it was proper for the ALJ to exercise her discretion and determine it was not necessary to obtain additional opinion evidence.  *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability." (quoting *Perez*, 77 F.3d at 48)).

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case.  In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, Plaintiff's testimony, and Dr. Balderman's opinion.  The RFC assessment in this case is consistent with the record and is supported by substantial evidence.  Accordingly, neither reversal nor remand is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        September 21, 2020
                    Rochester, New York

- 13 -